## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DANA JAMES MARTIN, et al.**                    **CIVIL ACTION**

**VERSUS**                                       **CASE NO. 14-0034**

**GENERAL ELECTRIC COMPANY, et al.**             **SECTION: "G"(2)**

### ORDER

Before the Court is Defendant General Electric Company's ("G.E.") "Motion for Summary Judgment."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny the motion.

### I. Background

*A.*   ***Factual Background***

This litigation arises out of a December 8, 2012  fire at the residence of Dana Martin and Chequita Martin ("the Martins").[2] The incident report provided by the Houma Fire Department lists the area of fire origin as "laundry area, wash."[3] According to the Petition, which was filed on December 6, 2013 in the 32nd Judicial District Court for the Parish of Terrebonne,  the fire was caused by a defective clothes dryer that was manufactured by G.E. and sold by Home Depot U.S.A., Inc. ("Home Depot").[4]  The dryer has been identified as a G.E. 5.8 cubic foot Extra-Long Capacity

---

[1] Rec. Doc. 27.

[2] Rec. Doc. 27-2 at ¶¶ 1-2.

[3] *Id.* at ¶ 3.

[4] Rec. Doc. 1-1 at ¶ 3.

Electric Dryer.[5] Dana Martin purchased it on July 29, 2010 and installed it himself.[6] The dryer had been in use for approximately two years at the time of the fire,[7] and it had not been repaired or serviced since its purchase; moreover, Plaintiffs had not reported any problems with it.[8]

In their Petition, the Martins allege that they suffered personal injuries as a result of the fire, and they seek damages for "past and future medical treatment, disfigurement, pain, suffering, mental anguish, loss of affection, society, guidance, counseling, earning capacity, loss of past and future wages, consortium, and enjoyment of life."[9] In addition to G.E. and Home Depot, the Martins name as defendants XYZ Insurance Company and RST Insurance Company, which allegedly provide insurance coverage to G.E. and Home Depot, respectively. G.E. was served with the Petition on December 13, 2013 and removed this matter to federal district court on January 6, 2014.[10]

On December 16, 2013, the Martins' homeowner insurance company, the Louisiana Farm Bureau ("LFB") (collectively with the Martins, "Plaintiffs"), filed a separate action against G.E. in the 32nd Judicial District Court, Parish of Terrebonne, seeking a reimbursement of $162,656.55 which LFB allegedly paid to the Martins under their insurance policy as a result of the December 8, 2012 fire.[11] G.E. also removed that lawsuit to federal district court. On April 3, 2014, the Martins'

---

[5]  Rec. Doc. 27-2 at ¶ 4.

[6] *Id.* at ¶ 5.

[7] *Id.* at ¶ 6.

[8] *Id.* at ¶ 7.

[9] Rec. Doc. 1-1 at ¶ 4.

[10] Rec. Doc. 1.

[11] *See* Case No. 14-0049, Rec. Doc. 1-1 at p. 3.

lawsuit and LFB's lawsuit were consolidated.[12] Plaintiffs dismissed Home Depot from the consolidated lawsuit on July 15, 2014.[13]

G.E. filed the pending Motion for Summary Judgment on December 22, 2014.[14] LFB and the Martins filed separate memoranda in opposition on December 30, 2014.[15] G.E. filed a memorandum in reply on January 7, 2015.[16]

## II. Parties' Arguments

### A.   G.E.'s Arguments in Support of Summary Judgment

G.E. argues that Plaintiffs' claims are limited to a single cause of action under the Louisiana Products Liability Act (the "LPLA"); namely, a claim that the dryer was defective in construction or composition.[17] G.E. cites *Allstate Ins. Co. v. General Elec. Co.* to support its argument that a plaintiff must produce evidence that a particular defect existed in the dryer at the time it left G.E.'s control.[18] Moreover, according to G.E., Plaintiffs have no direct evidence that the dryer materially deviated from G.E.'s specifications or performance standards.[19] Finally, G.E. contends that the doctrine of *res ipsa loquitur* is inapplicable in this case because the expert testimony fails to show any possibility

---

[12] Rec. Doc. 9.

[13] Rec. Doc. 12.

[14] Rec. Doc. 27.

[15] Rec. Doc. 29; Rec. Doc. 30.

[16] Rec. Doc. 37.

[17] Rec. Doc. 27-1 at p. 2.

[18] *Id.* at pp. 9–10 (citing *Allstate Ins. Co. v. General Elec. Co.*, 2002 WL 34727027 (W.D. La. 2002)).

[19] *Id.*

of defective manufacture.[20] According to G.E., "[t]he doctrine of *res ipsa loquitur* cannot be inferred based upon an alleged absence of evidence of improper use of the dryer."[21]

**B.      LFB's Arguments in Opposition**

LFB concedes that the LPLA controls the current litigation and provides Plaintiffs with their exclusive remedy against G.E.[22] However, according to LFB, the LPLA does not require direct proof of a specific product defect for a plaintiff in a product liability case to prevail.[23] Rather, according to LFB, Louisiana courts applying the doctrine of *res ipsa loquitur* allow circumstantial evidence to prove the existence of a defect.[24] In this case, LFB contends that circumstantial evidence demonstrates that the dryer had not been modified or changed since it was manufactured, that the fire began inside the dryer, and that there is no evidence of improper use or improper care.[25]

LFB next distinguishes the present case from *Allstate*, where the dryer at issue was purchased "used" from a third party that had rented it out short-term. Here, according to LFB, Plaintiffs purchased the dryer new and never reported any problems with it. Moreover, LFB contends, the expert testimony in this matter indicates that there is no evidence that the dryer was modified since it was manufactured, the appropriate electrical cord was installed correctly, and the

---

[20] *Id.* at p. 10.

[21] *Id.* at pp. 10–11.

[22] Rec. Doc. 29 at p. 4.

[23] *Id.*

[24] *Id.* at pp. 4–5 (citing *State Farm Mutual Insurance Co. v. Wrap Co., Inc.*, 626 So.2d 874 (La. App. 3d. Cir. 1993); *Lawson v. Mitsubishi Motor Sales of America, Inc.*, 05-0257 (La. 9/6/06) 938 So.2d 35); *Williams v. Emerson Electric Co.*, 909 F.Supp. 395 (M.D. La. 1995)).

[25] *Id.* at p. 4.

4

dryer was vented correctly.[26] Additionally, LFB argues that, unlike in *Allstate*, the dryer in this case was tested for flammable liquids, and no ignitable residue was detected. Finally, according to LFB, G.E. has put forth no reasonable hypothesis that has not already been excluded by Plaintiffs.[27]

### C.    *The Martins' Arguments in Opposition*

According to the Martins, a plaintiff in a products liability action arising under the LPLA may use circumstantial evidence under the doctrine of *res ipsa loquitur* to give rise to an inference that a product is unreasonably dangerous and, thus, defective.[28] In such cases, the Martins argue, the burden shifts to the defendant manufacturer to prove that the product was not defective when it left the manufacturer's control.[29]  Next, the Martins contend that GE's reliance on *Allstate* is misplaced because, in that case, there was no evidence indicating whether the dryer had been altered or repaired during its use as a rental, there was no ignitable liquid testing performed on the clothes in the dryer, and Allstate's expert never saw or inspected the dryer at issue, or had knowledge of the make and model of the dryer.[30]

Next, the Martins cite the deposition of Dana James Martin for the argument that all other reasonable hypotheses with respect to the cause of the fire have been excluded. Particularly, the Martins state that:

---

[26] *Id.* at p. 7.

[27] *Id.*

[28] Rec. Doc. 30 at p. 1 (citing *Roman v. W. Mfb., Inc.*, 691 F.3d 686 (5th Cir. 2012); *Hanover Am. Ins. Co. v. Trippe Mfg. Co.*, 843 So.2d 571, 576 (La. Ct. App. 2003)). The Martins additionally state that they adopt the opposition filed by LFB.

[29] *Id.* at pp. 1–2 (citing *Lawson v. Mitsubishi Motor Sales of America, Inc.*, 05-0257 (La. 9/6/06); 938 So.2d 35, 49).

[30] *Id.* at p. 3 (citing *Allstate*, 2002 WL 34727027 (W.D. La. 2002)).

> Mr. Martin testified that he bought the dryer at Home Depot. He did read the instruction manual and installation instructions that came with the dryer. His son was home from college and was using the dryer to wash towels. When he checked the dryer, there was no lint, very little lint, so he turned it on another cycle. The clothes weren't completely dry. He went into the laundry room and looked at the dryer, and it had ten minutes left on it. He opened the dryer at that time. He checked the towels and they were not dry. He checked the lint filter and there was no lint in it. His son does a good job checking for that also. Before the fire, the dryer had never been serviced. They had been using that dryer for two years, maintenance free, never had any problems with it from day one. The dryer was not overloaded, because it's an extra-large capacity dryer, and it wasn't overloaded.[31]

The Martins additionally contend that LFB's cause and origin expert, Christian K. Mulkey, testified that there was no electrical activity found outside of the dryer, and there was electrical activity found inside of the dryer.[32] Further, according to the Martins, Mulkey found no indication that the dryer had been modified or misused, or that there was lint accumulation; additionally, Mulkey testified that the dryer had been vented in accordance with the manufacturer's recommendations.[33] Finally, the Martins point to the deposition testimony of their electrical engineering expert, Ted Kaplon, wherein he stated that, upon his inspection of the dryer, he found two conductors that appeared to be severed by electrical shorting.[34] According to the Martins, Kaplon testified that he did not find any problems with the dryer exhaust vent or ignitable liquid residues, and that the clothes washer was not the cause of the fire.[35] Finally, the Martins state that Kaplon testified that absent improper use or improper care, dryers do not start fires unless there is a defect.[36] The Martins aver that they

---

[31] *Id.* at pp. 3–4 (citing Rec. Doc. 30-2).

[32] *Id.* at p. 4 (citing Rec. Doc. 30-3).

[33] *Id.*

[34] *Id.* (citing Rec. Doc. 30-4),

[35] *Id.*

[36] *Id.* at p. 6.

have eliminated natural gas, consumer abuse, and incendiary origin as other possible causes of the fire, and accordingly the doctrine of *res ipsa loquitur* is applicable in this case.[37]

**D.    G.E.'s Arguments in Further Support**

In response to the memoranda submitted by Plaintiffs, G.E. reavers that *res ipsa loquitur* does not apply to this case because G.E. did not have control of the clothes dryer when it caught fire.[38] According to G.E., the Louisiana Supreme Court in *Lawson* established that *res ipsa loquitur* did not apply to the plaintiff's product liability claim because the plaintiff did not sufficiently exclude the inference of the plaintiff's own responsibility or the responsibility of others besides the defendant in causing the accident.[39] G.E. argues that Plaintiffs' experts have never testified that the incident fire could only have been caused by the negligence of G.E.; to the contrary, according to G.E., the experts have "specifically testified that they have no opinion as to whether the dryer had defects when it left the manufacturer's control."[40] Finally, G.E. states that "[t]here is no case law that applies *res ipsa* where the manufacturer did not have control of the product at the time of the incident."[41]

### III. Law & Analysis

**A.    Standard on a Motion for Summary Judgment**

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[37] *Id.*

[38] Rec. Doc. 37 at p. 1.

[39] *Id.* at p. 2 (citing *Lawson v. Mitsubishi*, 938 So.2d 35 (La. 2006)).

[40] *Id.* at p. 3.

[41] *Id.*

a matter of law."[42] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[43] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[44] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law."[45] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[46]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[47] Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[48] To withstand a motion for summary judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts.[49] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied  merely by creating "some metaphysical doubt as to

---

[42] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[43] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[44] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[45] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[46] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[47] *Celotex*, 477 U.S. at 323.

[48] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994), cert. denied, 513 U.S. 871 (1994).

[49] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012), citing *Anderson*, 477 U.S. 242 at 248-49.

the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[50] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party.

**B.      *Res Ipsa Loquitur* as applied to claims under the Louisiana Products Liability Act**

The LPLA, codified at LA. REV. STAT. § 9:2800.52, establishes the exclusive theories of liability for manufacturers for damage caused by their products.[51] A manufacturer is liable for damages proximately caused by an unreasonably dangerous product when the damages arose from a reasonably anticipated use of the product.[52] Section 2800.54 of the LPLA states that a product is unreasonably dangerous only if:

(1)      The product is unreasonably dangerous in construction or composition;

(2)      The product is unreasonably dangerous in design;

(3)      The product is unreasonably dangerous because an adequate warning about the product has not been provided; or

(4)      The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product.[53]

In the present case, G.E. contends, and Plaintiffs do not contest, that the only remaining issue arising under the LPLA is whether the dryer was defective in construction or composition under LPLA § 2800.55. That section states that:

A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way

---

[50] *Little*, 37 F.3d at 1075.

[51] La. R.S. 9:2800.52.

[52] La. R.S. 9:2800.54(A).

[53] La. R.S. 9:2800.54(B).

from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.[54]

Ordinarily, under the LPLA, to maintain a construction or composition defect claim, the plaintiff bears the burden of proving that at the time the product left the manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product, or from identical products manufactured by the same manufacturer.[55]

However, the Louisiana Supreme Court has explained that the evidentiary doctrine of *res ipsa loquitur* may be used in a products liability action to establish an inference that a product was unreasonably dangerous when that product left a manufacturer's control.[56] In *Lawson*, the Louisiana Supreme Court stated that:

> This inference merely shifts the burden of proof to the defendant-manufacturer, such that the manufacturer must prove that the product was not defective when it left the manufacturer's control. The defective nature of a product will not be "presumed" by utilizing this doctrine, but rather, "[i]t simply gives the plaintiff the right to place on the scales, 'along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of [the unreasonably dangerous nature of a product]' sufficient to shift the burden of proof."[57]

In order to invoke the doctrine of *res ipsa loquitur*, the plaintiff must demonstrate the following three criteria:

(1)     the injury is of the kind which does not ordinarily occur in the absence of negligence

---

[54] La. R.S. 9:2800.55.

[55] La. R.S. 9:2800.55. *See also Hanover Am. Ins. Co. v. Trippe Mfg. Co.*, 37,060 (La. App. 2 Cir. 04/09/03), 843 So.2d 571, 575.

[56] *Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 938 So.2d 35, 43-44 (La. 2006). *See also See Weber v. Fidelity & Casualty Insurance Company of New York*, 259 La. 599, 250 So.2d 754 (La. 1971); *Guidry v. Louisville Tin & Stove Co., Inc.*, 613 So.2d 1114 (La. App. 5 Cir. 1993); *State Farm Mut. Auto. Ins. Co. v. Wrap On Co., Inc.*, 626 So.2d 874, 877 (La. App. 3 Cir.1993).

[57] *Id.* at 20 (citation omitted).

> on someone's part;

(2)     the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and

(3)     the alleged negligence of the defendant must be within the scope of the defendant's duty to the plaintiff.[58]

With regard to the second criteria, a plaintiff need not negate all possible causes, but she must present evidence that "excludes other reasonable hypotheses with a fair amount of certainty."[59]  That is, a plaintiff's evidence is sufficient when "the only reasonable and fair conclusion is that the accident resulted from a breach of duty or omission on the part of the defendant."[60]  A plaintiff must not only exclude inference of her own responsibility, but also "the responsibility  of others besides defendant."[61]

When the plaintiff meets her burden with respect to the three criteria enumerated above,  the burden shifts to the defendant manufacturer to prove that the product was not defective when it left the manufacturer's control.[62]

## C.     Analysis

The parties do not dispute that the LPLA controls the current litigation and provides Plaintiffs with their exclusive remedy against GE in this matter.[63] Instead, the parties disagree as to whether

---

[58] *Id.* at 50; *see also Linnear v. Centerpoint Energy*, 2006–3030, p. 6–7 (La.09/05/07); 966 So.2d 36 at 44.

[59] *State Farm Mut. Auto. Ins. Co. v. Wrap–On Co., Inc.*, 626 So.2d 874, 877 (La. App. 3 Cir. 1993).

[60] *Jurls v. Ford Motor Co.*, 2000–32,125, p. 8 (La.App. 2 Cir. 1/6/00); 752 So.2d 260, 265.

[61] *Lawson,* 938 So.2d at 50; *see also Ayala v. Enerco Grp., Inc*., 569 Fed. Appx. 241, 249 (5th Cir. 2014) (unpublished).

[62] *See Lawson,* 938 So.2d at 49.

[63] *See* Rec. Doc. 29 at p. 4.

Plaintiffs have provided sufficient evidence of a manufacturing defect in the dryer. G.E. contends that summary judgment is appropriate because Plaintiffs have not proffered direct evidence that a defect existed when the dryer left G.E.'s control.[64] Plaintiffs argue that they have proffered sufficient circumstantial evidence to prove the existence of a defect and to invoke *res ipsa loquitur*.[65]

G.E. relies on *Allstate v. General Electric Co.*, an unpublished decision from the Western District of Louisiana, to support its argument that summary judgment is appropriate here because Plaintiffs cannot provide direct evidence that the dryer was defective when it left G.E.[66]   In *Allstate*, which is not binding on this Court, the plaintiffs alleged that a fire was caused by a dryer defectively manufactured by G.E. In an attempt to survive summary judgment, the plaintiffs presented deposition testimony indicating that the dryer was only three months old at the time of the fire, that the fire occurred inside the dryer, and that they had never done repair, maintenance, or service work on the dryer.[67] However, the court found that  the dryer had been "a rental" before it was purchased by the plaintiffs, and accordingly "[t]he evidence presented establishes there is a break in the chain of custody between the time the dryer left the custody of G.E. to the time it was purchased by the insureds."[68] The court granted summary judgment in favor of G.E. because the plaintiffs failed to present circumstantial or direct evidence "to establish a history for the dryer illustrating no alteration, repair or abuse during this time so that it might be reasonable to infer that the condition of the dryer when it left G.E. should be the same as at the time of the fire."[69]  Additionally, the *Allstate* court found

---

[64] Rec. Doc. 27-1 at p. 11.

[65] Rec. Doc. 29 at p. 4.

[66] *Allstate Ins. Co. v. General Elec. Co.*, 2002 WL 34727027 (W.D. La. 2002)).

[67] *Id.*

[68] *Id.* at *2.

[69] *Id.* at * 7.

that plaintiffs failed to exclude several reasonable hypothesis presented as to the cause of the fire. First, the court found that plaintiffs' expert failed to test the dryer load for the presence of flammable liquid. Next, the plaintiffs' expert identified the cause of the fire as a mechanical failure, which "presented a reasonable hypothesis for the fire which is unrelated to an alleged violation of La. Rev. Stat. art 2800.55."[70] Finally, the court found that plaintiffs were unable to account for the period that the dryer was used as a rental unit, and that accordingly plaintiffs were unable to exclude the reasonable hypothesis that the dryer had been damaged or altered during that period.[71]

The present case is distinguishable from *Allstate* in several respects. First, Plaintiffs have proffered evidence that the dryer was purchased new by Plaintiff Dana James Martin at Home Depot, and that it had never been repaired or modified.[72]  Therefore, unlike in *Allstate*, there is no period of time unaccounted for, and accordingly no break in the chain of custody.  This evidence is sufficient to support the reasonable inference that the condition of the dryer was the same from the time it left G.E. until the time of the fire. Next,  unlike in *Allstate*, here, G.E. does not identify any reasonable hypothesis as to the cause of the fire that Plaintiffs have not already excluded. In fact, Plaintiffs present deposition testimony  indicating that the fire began inside of the dryer,[73]  that the dryer was not overloaded at the time of the fire, and that there was no evidence of consumer abuse, excessive lint buildup,  or natural gas involvement in the fire.[74] Additionally, Plaintiffs' expert, Ted Kaplon, testified that he ruled out flammable liquid, incendiary origin, or a defect with the nearby washing

---

[70] *Id.*

[71] *Id.* at *8.

[72] Rec. Doc. 29-2 at pp. 32-33; Rec. Doc. 30-2 at p. 2.

[73] Rec. Doc. 29-6 at pp. 11-12; Rec. Doc. 29-7 at p. 32.

[74] *See* Rec. Doc. 29-7 at p. 32; Rec. Doc. 29-2 at p. 33; Rec. Doc. 29-6 at pp. 35-36.

machine as the cause of the fire.[75] Accordingly, the Court finds that *Allstate* is not persuasive here.

The other cases upon which G.E. relies are similarly unpersuasive. In *Brown v. Olin Chem. Corp.*, the Fifth Circuit determined that *res ipsa loquitur* did not apply where plaintiffs on a vessel were allegedly injured by the emission of dangerous chemicals, but could not show that the harm could only have been caused by the negligence of the defendant.[76] However, unlike in the instant case, *Brown* did not arise under the LPLA or involve an allegedly defective product.[77] Additionally, in *Riley v. Stihl, Inc.*, an unpublished decision from the Western District of Louisiana, the court found that the plaintiff failed to put forth sufficient evidence, including any expert reports, to exclude his own error or some post-manufacturing defect or damage to a chain saw that caused a fire.[78] Here, Plaintiffs have submitted substantially more evidence, including expert testimony, supporting an inference of a product defect.

The Court finds that a genuine issue of material fact exists with respect to whether the dryer was defective or unreasonably dangerous in construction or composition at the time it left G.E.'s custody.[79] Plaintiffs proffer deposition testimony that the fire began inside of the dryer,[80] that the dryer had been purchased new two years prior to the fire, and that it had never been repaired or modified.[81] Plaintiffs additionally present testimony that the dryer was not overloaded, that it showed no evidence of consumer abuse or excessive lint buildup, and that there was no evidence of incendiary origin or

---

[75] Rec. Doc. 29-7.

[76] *Brown v. Olin Chem. Corp.*, 231 F.3d 197, 201 (5th Cir. 2000).

[77] *Id.*

[78] *Riley v. Stihl, Inc.*,  04-1732, 2005 WL 2304464, at *1 (W.D. La. Aug. 22, 2005).

[79] *Lawson*, 938 So.2d at 43-44.

[80] Rec. Doc. 29-6 at pp. 11-12; Rec. Doc. 29-7 at p. 32.

[81] Rec. Doc. 29-2 at pp. 32-33.

14

natural gas involvement in the fire.[82]

As stated above, the application of *res ipsa loquitur* "does not relieve the plaintiff of the ultimate burden of proving by a preponderance of the evidence all of the elements necessary for recovery."[83] Before such an inference may be permitted, Plaintiffs must demonstrate, and the factfinder must determine, that (1) the injury is of the kind which does not ordinarily occur in the absence of negligence on someone's part; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and (3) the alleged negligence of the defendant must be within the scope of the defendant's duty to the plaintiff.[84] Additionally, even if the jury finds that Plaintiffs have met their burden with respect to this test, the burden will simply shift to G.E. to prove that a manufacturing defect was not present in the dryer at the relevant period. Accordingly, although Plaintiffs have proffered sufficient evidence of a genuine issue of material fact to survive summary judgment, the Court notes that the determination of whether the dryer was defective is ultimately a task for the jury.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that G.E.'s "Motion for Summary Judgment"[85] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, on this 1th day of February, 2015.

_____
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[82] *See* Rec. Doc. 29-7 at p. 32; Rec. Doc. 29-2 at p. 33; Rec. Doc. 29-6 at pp. 35-36.

[83] *Cangelosi v. Our Lady Of the Lake Regional Medical Center*, 564 So.2d 654, 660 (La. 1990).

[84] *Lawson*, 938 So.2d at 50.

[85] Rec. Doc. 27.